## Girard Trust Corn Exchange Bank Appeal

*Allen S. Olmsted, 2nd,* for appellant.

*Edward H. P. Fronefield,* township solicitor, for Radnor Township Commissioners.

BRETHERICK, J., February 4, 1953.—This case is before the court on the appeal of Girard Trust Corn Exchange Bank from the action of the Board of Commissioners of Radnor Township disapproving a subdivision plan of premises situated at Conestoga Road and Ithan Avenue, Radnor Township.

Appellant avers in its petition for appeal, inter alia, that petitioner is the record owner of premises situate south of Conestoga Road and east of Ithan Avenue, Radnor Township, but holds the same as trustee under declaration of trust dated December 14, 1918; that pursuant to the provisions of the Act of May 27, 1949, P. L. 1955, and the Radnor Township Subdivision Ordinance of 1951, petitioner made application to the Board of Commissioners of Radnor Township on December 11, 1951, for approval of a subdivision plan of these premises, copies of the application and subdivision plan being attached to the petition; that by resolution adopted December 26, 1951, the board disapproved the application and subdivision plan, the reason advanced for such disapproval being "the unwillingness of petitioner to accede to the requirement of said board that petitioner at its cost and expense construct a trunk

sewer mainly across lands of other owners. . . ." Appellant avers that the action of the board in disapproving the application and subdivision plan was arbitrary, discriminatory, and contrary to law, and imposes an illegal and unconstitutional burden on petitioner's land.

The township filed an answer admitting, in substance, the facts set forth in the petition, but denying that the action of the board of commissioners in refusing to approve the subdivision plan, under the circumstances, was arbitrary, discriminatory or contrary to law. The answer avers that, to the contrary, such action "was reasonable action by the commissioners".

The appeal was heard de novo before Bretherick, J., on April 16 and 17, 1952, and the testimony has been transcribed and filed of record.

We are advised that since the hearing, appellant has separately applied for the approval of the subdivision plan for the western part of the tract, i.e., the part which will be served by the Ithan Avenue sewer, and the township has approved that plan. We are presently concerned, therefore, with the subdivision plan only as it relates to the eastern part of the tract.

Counsel have filed requests for findings of fact and conclusions of law and briefs. From the testimony taken before this court we make the following

### Findings of Fact

1. In 1918 George H. McFadden conveyed to Girard Trust Company, in trust, a tract of land containing about 147 acres, situated at Conestoga Road and Ithan Avenue, Radnor Township, Delaware County, Pa.

2. Under its terms, the trust terminates upon the death of the last surviving of the settlor's three children. Two of these children have died; the third is a woman of 74 years. When the trust ends title will rest in settlor's descendants, of whom there are now nine, three of whom are minors.

3. At the time of the creation of the trust the tract was used as a farm by settlor, who lived on that part of the land to the north of Conestoga Road. Settlor died in 1927.

4. In 1929 the trustee consulted experts on subdivision of land, and following their advice made a plan substantially like the one now before the court. This plan showed two roads, one known as Boxwood Road, the other as Barclay Road, to be built across the property. The lots vary in size from one acre up. A copy of this plan went into the township files.

5. During the same year (1929), the trustee paved and opened Boxwood Road and a part of Barclay Road. It has never opened or paved the rest of Barclay Road. The opened roads appear on the township zoning maps and other maps as private roads.

6. In 1929 the trustee began the sale of the lots shown on the plan, and most of the purchasers built houses on them. Up to February 28, 1951, the trustee had sold about 47 acres of land to 16 owners who had built 15 houses on them. On the last-named date the trustee still owned about 100 acres of the original tract, all of which was situated south of Conestoga Road and east of Ithan Avenue.

7. On February 28, 1951, Radnor Township enacted a subdivision ordinance (ordinance no. 671). This ordinance provided, among other things, that no landowner could sell any part of his land until the township authorities had approved a plan of the subdivision.

8. In addition to the sales theretofore made, the trustee, on February 28, 1951, had contracted to sell four lots, but had not conveyed them. One of these lots was later conveyed and built upon by special permission of the township. The township refused special permission for any other sales, and therefore no other sales have been made, or conveyances completed.

9. After February 28, 1951, the trustee submitted a subdivision plan to the township and to the Delaware County Planning Board. The latter approved it in April 1951. The township has signified its approval of the plan as to all features except sanitary sewers.

10. All of the houses built on land purchased from the trustee have on-site sewage disposal.

11. A tract of land across Ithan Avenue from the McFadden tract is being subdivided. The township commissioners have approved this subdivision plan, which provides for on-site sewage disposal.

12. The nearest point at which sewers from the McFadden tract can be connected with existing public sewers is at Ithan Avenue and Clyde Road.

13. The township contemplates the construction of two trunk sewers from this point toward the McFadden tract. One of these sewers, which will go up Ithan Avenue, will serve the drainage area on the western side of the McFadden tract; the other sewer, which will go up Kirk's Run over private lands, will serve the eastern part. Both trunk sewers will, in addition to the McFadden tract, serve lands heretofore sold out of the McFadden tract, and lands above, below and alongside the McFadden tract which never were a part of it.

14. The township has declared the McFadden tract a "sewer area" (i.e., an area which will eventually be served by public sewers), but it has not committed itself to the construction of either of the above-mentioned trunk sewers. It has not indicated when it proposes to build them, nor has it prepared plans, made surveys, or taken any steps toward the acquisition of a right-of-way through the private lands in which the Kirk's Run sewer is to be laid.

15. The township and the trustee agree that, if the eastern section of the McFadden tract is to be sewered, the following sewers will have to be built:

A. A main trunk sewer from the intersection of Ithan Avenue and Conestoga Road, along Conestoga Road to Kirk's Run, thence along Kirk's Run, successively through lands of Benjamin F. James, the McFadden tract, Richard N. Bromley, the McFadden Tract, Lloyd Coates (now Evans), Wm. Henry Snyder, Dr. Charles A. Rankin, and R. K. Cassatt to the existing sewer at Clyde Road and Ithan Avenue.

B. Three sewers connecting with the above from the high points of land (a) in Boxwood Road, east of Kirk's Run; (b) in Boxwood Road, west of Kirk's Run, and (c) in Barclay Road (unopened) and across lands of the McFadden tract.

16. The township and the trustee have had several conferences looking toward a solution of the sewer problem. At these conferences they have agreed, tentatively and without prejudice, as to all of the above sewers except the middle segment of the main sewer above mentioned, viz., the segment from the Conestoga Road across lands of James, McFadden, Bromley, McFadden, Evans and Snyder. The township will build the upper segment (along Conestoga Road) and the lower segment (across lands of Rankin and Cassatt) of the main Kirk's Run sewer, and from the high point of land in Boxwood Road west of the Kirk's Run sewer, along Boxwood Road to the Kirk's Run sewer, assessing the cost thereof against abutting owners, including the McFadden trust. The trustee will build the other two sewers above mentioned absorbing all the cost itself.

17. The tentative agreement above mentioned is not a commitment on the part of the township as to when, if ever, it will build the sewers above named. It is merely an agreement that the trustee will not be required to build them as a prerequisite of the approval of the subdivision.

18. Except for the sewer on Barclay Road (which will serve the McFadden lands only), all of the sewers will serve lands which do not belong to the McFadden trust as well as lands which do.

19. The total cost to the trustee for building and opening roads and constructing sewers, which it has to pay or undertake to pay, as a prerequisite of the approval of the subdivision plan is $55,000 to $60,000. This does not include any part of the cost of the middle segment of the Kirk's Run sewer.

20. The middle segment of the Kirk's Run sewer is to be of 12-inch diameter from the Cassatt-Snyder line to Boxwood Road, and 8 inches above.

21. The estimated cost of building the middle segment of the Kirk's Run sewer is $17,500.

22. The total length of the middle segment of the Kirk's Run sewer is 1830 feet. About one fifth of this is over the lands of the McFadden trust, and four fifths is over the lands of four other property owners.

23. The trustee has no sewer easement over the lands of Snyder, Evans, Bromley and James.

24. The township has no sewer easement over the lands of Snyder, Evans, Bromley and James, and has taken no steps to obtain such easements either by eminent domain or otherwise.

25. The middle segment of the Kirk's Run sewer will serve as an outlet for the upper segment of that sewer. It will serve an area only part of which is owned by the McFadden trust.

26. The entire proposed sewer from the intersection of Conestoga Road and Ithan Avenue to the existing sewer at Clyde Road is a main trunk line sewer.

27. The township subdivision regulations contain the following provision with reference to sanitary sewers: "Where required. Where practicable, connection with the Township Sanitary Sewer System shall be provided."

## Discussion

While appellant has not questioned the legality of the subdivision ordinance or the regulations, it should be noted at the outset that the regulations, at least, were not adopted in the manner prescribed by the enabling act. Section 3061 of the First Class Township Code, 53 PS §19092-3061, empowers boards of township commissioners "to adopt by ordinance, land subdivision regulations". The Radnor Township subdivision regulations were not adopted by an ordinance. To the contrary, section 4 of the ordinance provides, "Such regulations shall be approved by resolution of this Board, and when so approved shall have the same force and effect as provisions of this ordinance". This is not a compliance with the terms of the Enabling Act of 1949, supra.

The applicable rule of law is clear and well-settled.

"Where the method provided for exercising the power is by ordinance or by-law no other method than that so prescribed will suffice to give validity to the action of the municipal governing body. In such case neither a resolution nor a mere verbal motion will suffice. . . . Nevertheless, in the absence of an affirmative showing that a resolution is passed with the same formalities, and notified the public in the same manner as an ordinance, an act which the municipal charter requires to be done by ordinance cannot be done by resolution; nor can a general ordinance authorize it to be done": 43 Corpus Juris, Municipal Corporations, 251.

For an illuminating discussion of the distinction between an ordinance and a resolution, see McQuillin, Municipal Corporations, vol. 5, sec. 15.02, p. 51. In Commonwealth ex rel. v. Bitner, 294 Pa. 549, 555, it is said:

"A resolution or order, as sometimes called, is an informal enactment of a temporary nature, providing

for the disposition of a particular piece of the administrative business of a municipal corporation. It is not a law and there is no difference between a resolution and a motion (19 R. C. L., page 895)."

If the question of the legality of the ordinance and regulations had been brought before us in a proper proceeding, we should have been compelled to hold them invalid. The authority of a municipal body to legislate or to contract is conferred by the lawmaking power of the State; hence it must be exercised in the manner provided in the statute conferring it: Carpenter v. Yeadon Borough, 208 Pa. 396; New York Casualty Co. v. Hood, and Ridley Township, 33 Del. Co. 19. It appears to be the rule, however, that where the attack upon an ordinance of a first class township relates to the manner of its passage or to procedural irregularities, the sole and exclusive remedy is by way of complaint to the court of quarter sessions, under section 1502 of the code: Griffith v. McCandless Township, 366 Pa. 309, 313.

Turning, now, to a consideration of the case on its merits, the precise question before us is aptly stated by learned counsel for appellant:

"Can a Township, as a prerequisite to the approval of a subdivision plan, require the landowner to build, over private lands which it does not own and over which neither it nor the township has rights of way, a main sewer planned to serve, not merely the subdivision, but a large area owned by others?"

We think the question requires a negative answer.

The sole controversy between the parties revolves about the so-called "middle segment" of the proposed Kirk's Run sewer. We may cast out of view at once any question relating to the other proposed main sewer, i.e., the sewer in Ithan Avenue which will serve the drainage area on the western side of the McFadden tract.

Kirk's Run sewer, as projected, may be described as a main truck sewer from the intersection of Ithan Avenue and Conestoga Road, along Conestoga Road to Kirk's Run, thence along Kirk's Run, successively through lands of Benjamin F. James, the McFadden tract, Richard N. Bromley, the McFadden tract, Lloyd Coates (now Evans), Wm. Henry Snyder, Dr. Charles A. Rankin, and R. K. Cassatt to the existing sewer at Clyde Road and Ithan Avenue. The township would build the upper segment (along Conestoga Road) and the lower segment (across lands of Rankin and Cassatt). The middle segment is the segment from Conestoga Road across lands of James, McFadden, Bromley, McFadden, Evans and Snyder. The township says that appellant must pay the cost of constructing this segment, or the township will not approve appellant's subdivision plan. Appellant contends that the township has no right to impose such obligation upon it as a condition to the approval of the subdivision plan.

The total length of the middle segment of the Kirk's Run sewer is 1830 feet. Only about one fifth of this is over lands of the McFadden trust; the remaining four fifths is over lands of four other property owners, i.e., James, Bromley, Evans and Snyder. (As we understand the testimony, these four other properties were included in the original McFadden tract. They were sold by the trustee some years ago.) Neither the trustee nor the township has any sewer easement over the lands of James, Bromley, Evans and Snyder.

From the maps and plans introduced into evidence at the hearing, it may be seen that the Kirk's Run sewer is designed to serve a drainage area of considerable extent. Included in this drainage area are the eastern part of the McFadden tract, lands heretofore sold out of the original tract, and a large territory which never was a part of the McFadden tract. A good part of the drainage area lies north of Conestoga

Road, where the McFadden trust owns no lands at all. One of the functions of the middle segment of the sewer would be to receive sewage from the upper segment and transport it down to the lower segment.

In addition, the middle segment of the Kirk's Run sewer would receive sewage from (1) a sewer in Boxwood Road, east of Kirk's Run, (2) a sewer in Boxwood Road, west of Kirk's Run, and (3) a sewer in Barclay Road (unopened) and across lands of the McFadden tract. Of these last-mentioned sewers, the township will construct (2), and the trustee will construct (1) and (3). Except for the sewer on Barclay Road, which will serve the McFadden lands only, all of the sewers will serve lands which do not belong to the McFadden trust as well as lands which do.

We think it is incontestably clear that the proposed Kirk's Run sewer is a main trunk line sewer, and that the responsibility for its construction rests upon the township. We know of no principle of law, and our attention has been directed to none, which authorizes the township to delegate this responsibility to a private landowner. Section 3066 of the code does provide that before approving any subdivision plan, the township commissioners may require that street improvements, including sanitary sewers, shall have been installed. The reference, clearly, is to street improvements within the subdivider's tract. It could not have been the legislative intent to authorize the township to require a landowner to construct a main trunk line sewer serving a large drainage area, a great part of which lies outside the subdivided tract. Such a legislative intent would render the law unconstitutional.

The township's demand on appellant to build this sewer is the more unjustifiable in the light of the undisputed fact that four fifths of it would extend through the private property of other landowners,

over which neither appellant nor the township has sewer easements.

We conclude, then, that the Township of Radnor was without power to require appellant to construct any part of the Kirk's Run sewer as a prerequisite to the approval of appellant's subdivision plan.

Wholly apart from any other consideration in the case, we think, in the circumstances appearing, that the township's requirement is arbitrary and unreasonable. Manifestly, the sewer that appellant has been ordered to lay would be useless until the connecting sewers are built, i.e., the upper segment on Conestoga Road, and the lower segment across lands of Rankin and Cassatt. The construction of the connecting sewers is the township's obligation under the projected plan, and without them the middle segment would be simply a "dead-end" sewer. Yet, there is no evidence as to when, if ever, the township will build these sewers. Learned counsel for the township freely admitted at the hearing that the commissioners have made no commitment in the matter.

We are of opinion, on a full view of the case, that the action of the board of commissioners must be reversed, and appellant's subdivision plan approved.

*Conclusions of Law*

1. The court has jurisdiction of the parties and the subject matter of this appeal.

2. The construction of the proposed Kirk's Run sewer is the responsibility of the Township of Radnor alone.

3. The Township of Radnor is without authority in law to require appellant to construct any part of the proposed Kirk's Run sewer, as a prerequisite to the approval of appellant's subdivision plan.

4. In any event, the imposition of such requirement is arbitrary and unreasonable in the circumstances of the case.

18

5. The action of the Township of Radnor disapproving appellant's subdivision plan must be reversed, and the subdivision plan approved.

6. The Township of Radnor should pay the costs of this proceeding.

### Decree Nisi

And now, February 4, 1953, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows

1. That the action of the Board of Commissioners of the Township of Radnor disapproving appellant's subdivision plan be, and the same is, reversed, and the subdivision plan is hereby approved.

2. The Township of Radnor shall pay the costs of this proceeding.

### Order

The clerk of courts is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi, and, if no exceptions be filed thereto within 10 days after the service of such notice, to enter the decree nisi as a final decree.